**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JACARA MONIQUE GARTRELL,
Individually and on behalf of a class of
persons similarly situated,

      Plaintiff,

                                  Case No. 3:19-cv-00442-TJC-JBT

v.

J.J. MARSHALL & ASSOCIATES, INC.,

      Defendant.

_____/


**J.J. Marshall & Associates, Inc.'s Motion for Reconsideration re:**
**Granting Modification of the Scheduling Order and Leave to Amend the Complaint**


G<small>OLDEN</small> S<small>CAZ</small> G<small>AGAIN</small>, PLLC
1135 Marbella Plaza Drive
Tampa, Florida 33619


*Attorneys for Defendant*
*J.J. Marshall & Associates, Inc.*

## TABLE OF CONTENTS

Page

I.     Introduction…….………………………………………………………1

II.    Relevant Procedural History……………….…………………….……………1

III.   Legal Standard………………………………………………………..4

IV.    Argument…………………………………………………………..4

    1.   The court committed clear error by failing to determine whether it had jurisdiction prior ruling on Plaintiff's Motion….…………………………4

    2.   The court erroneously concluded 28 U.S.C. § 1653 could be used to fix the Complaint's deficient jurisdictional facts……………………….………7

    3.   Jurisdiction cannot be created by equity…………………………….……16

    4.   Jurisdiction cannot be created after-the-fact by amending the operative complaint……………………………………….…………………………18

V.     Conclusion……..………………………………………………….....11

## TABLE OF AUTHORITIES

Page(s)

Cases

*American Fire & Cas. Co. v. Finn*,
    341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951)......................................................17

*Bonner v. City of Prichard,*
    661 F.2d 1206 (11th Cir.1981) (en banc ..........................................................16

Canadian Indemnity Co. v. Republic Indemnity Co.,
    222 F.2d 601 (CA9 1955) ...........................................................................10, 11

*Dorsch v. Pilatus Aircraft Ltd.*,
    2012 WL 1565447 (M.D.Fla. May 2, 2012)...........................................................4

*Ex parte McCardle*,
   74 U.S. 506 (1868) ................................................................. 1, 2, 5, 12
*Farquharson v. Citibank, N.A.*,
   664 F. App'x 793 (11th Cir. 2016)........................................................18
*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567, 124 S. Ct. 1920, 158 L. Ed. 2d 866 (2004) ...................18, 19, 20, 21
*Id.*,
   138 S. Ct. 897 (2018) ..........................................................................13
*Id.*,
   490 U.S. 826 ...........................................................................8, 9, 13, 16
*Id.*,
   583 F.3d 750 (11th Cir. 2009) ................................................ 13, 14, 15
*Id.*,
   602 F.2d 730 (5th Cir. 1979)................................................................16
*Id.*,
   979 F.3d 917 (11th Cir. 2020) ..............................................................3
*In re Carter*,
   618 F.2d 1093 (5th Cir. 1980) ............................................................18
*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ..........................................................20
*Lussier v. Dugger*,
   904 F.2d 661 (11th Cir.1990)................................................................4
*Mollan v. Torrance*,
   9 Wheat. 537, 6 L.Ed. 154 (1824) ........................................ 18, 19, 20
*Owen Equipment & Erection Co. v. Kroger*,
   437 U.S. 365, fn. 21 (1978)................................................................17
*Schlesinger v. Councilman*,
   420 U.S. 738 (1975) ...........................................................................10
*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ................................................................ 4, 5, 6, 8
*United States v. Amodeo*,
   916 F.3d 967 (11th Cir.) ......................................................................5
*United States v. Locke*,
   471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ............................16
*United Supreme Council v. United Supreme Council of the Ancient*,
   792 Fed. Appx. 249 (4th Cir. 2019) ....................................................11
*Wright v. Dougherty County*,
   358 F.3d 1352 (11th Cir.2004) ...................................................8, 19

   Statutes
10 U.S.C. s 876...................................................................................10
28 U.S.C. s 1331 ................................................................................10
28 U.S.C. § 1653...........................................................................passim

Art. 76 of the Uniform Code of Military Justice ....................................................10

    Other Authorities

*v. 7027* ..................................................................................................................13

## I.     Introduction

In 1868, the Supreme Court declared: "Without jurisdiction the court cannot proceed *at all* in any cause."[1] Recognizing *Trichell* created doubt about its jurisdiction, the court issued an Order stating: "plaintiff's standing must be resolved before the case can proceed."[2] But instead of determining whether it had jurisdiction, the court employed "hypothetical jurisdiction" and erroneously ruled § 1653 permitted Gartrell to retroactively create Article III standing.

## II. Relevant Procedural History

On July 6, 2020, the Eleventh Circuit issued its decision in *Trichell* in which the Court—applying the Supreme Court's 2016 decision in *Spokeo v Robins*, as well as its own prior precedent in *Perry v CNN*, *Cordoba v DIRECTV*, *Salcedo v Hanna*, *Palm Beach Golf Center v Sarris*, and *Nicklaw v Citimortgage*—determined the FDCPA plaintiffs had failed to allege sufficient facts to create Article III jurisdiction.

Upon learning of *Trichell*, the court entered an Order: 1) stating "Trichell calls into questions plaintiff's standing here"; 2) recognizing that "plaintiff's standing must be resolved before the case can proceed", and 3) requiring the parties to brief Gartrell's Article III standing.[3]

In her brief, the Plaintiff argued vociferously that she had standing since her FDCPA claims arose of so-called "substantive" violations of the FDCPA and not

---

[1] *Ex parte McCardle*, 74 U.S. 506, 514 (1868) (emphasis added).
[2] *See*, DE 44 at p. 1.
[3] *See*, DE 44 at p. 1.

mere "procedural violations", and therefore injury was presumed.[4]  To support her arguments, the Plaintiff relied entirely on the unpublished decision from the Eleventh Circuit in *Church v Accretive Health*, while dismissing as irrelevant the prior precedent cited in *Trichell*, to ultimately conclude:

> *Trichell*…is not a 'the sky is falling' decision that some have made it out to be. In fact, it has little to do with well plead substantive statutory violations.[5]

In its response, J.J. Marshall argued that *Trichell* laid waste to the "procedural vs. substantive" distinction created by the panel in *Church*—which didn't even merit a mention in *Trichell*—and **reiterated**, consistent with *Spokeo* and its prior precedents in *Perry*, *Cordoba*, *Salcedo*, *Palm Beach Golf*, and *Nicklaw,* that concrete injury is necessary to satisfy Article III jurisdiction in cases alleging statutory violations. The decision was not a change in the law; it was instead simply the application of prior precedent to a FDCPA case.

Confident that her "substantive vs. procedural" argument would rule the day, the Plaintiff sat back awaiting a favorable ruling from the court on the standing issue. But before that could happen, the Eleventh Circuit issued its ruling in *Muransky v Godiva Chocalatier*, which doubtlessly ruined the Plaintiff's plan since, in that case, the Court—relying on *Nicklaw*—held:

> arguments grounded in a distinction between substantive and procedural rights miss the point and are unconvincing because they depend entirely on the framing of the right. The question, always, is whether an injury in fact accompanies a statutory

---

[4] *See*, DE 45, *generally.*
[5] *Ibid.* at p.15.

> violation.
>                                    …
> We thus continue to adhere to our decision in *Nicklaw*.
> Muransky's assertion that he does not need to show anything
> more than a noncompliant receipt because his statutory right
> was "substantive" cannot be squared with our precedent—or
> with the central holding of *Spokeo*. To avoid "alleging a bare
> procedural violation," the plaintiff must show either some harm
> caused by the violation or a material risk of harm. What
> Muransky has missed is that the word "bare" is just as
> important as the word "procedural."[6]

*Muransky* removed any possibility the court could agree with Plaintiff's

argument that Article III jurisdiction existed solely because her claims were based on

"substantive" and not "procedural" violation since the Eleventh Circuit recognized

in *Muransky*—just as Defendant had argued in its brief—*Nicklaw* drove a stake

through the heart of the "substantive vs. procedural" distinction years earlier.[7] Not

surprisingly, a few weeks after Defendant filed *Muransky* as supplemental authority,

Plaintiff  filed a combined Motion to Modify the Scheduling Order and for Leave to

Amend the Complaint (Motion to Amend) requesting the court grant her permission

to shore up her pending Complaint by "add[ing]…additional Article III factual

allegations."[8] While not dispositive, it is worth noting that Gartrell never argued the

court could determine it lacked jurisdiction yet grant her Motion to Amend.

As recognized by the Supreme Court time and again, the absence of

jurisdiction left this court with *no option* but to announce that fact and dismiss the

case. But the court impermissibly proceeded to review and grant Gartrell's Motion to

---

[6] *Id.*, 979 F.3d 917, 930 (11th Cir. 2020) (internal citations and quotations omitted).
[7] *Id.*
[8] *See*, DE 53 at p. 6.

Amend and in the process, violating a basic tenet of Article III jurisdiction that "[w]ithout jurisdiction the court cannot proceed at all in any cause."[9]

### III.   Legal Standard

It is within the Court's discretion to grant reconsideration.[10] The Court will reconsider a prior ruling if there is a need to correct clear error.[11] Because the Court always strives to reach the correct result given the facts and applicable law, it will when appropriate, exercise its broad judgment to alter an order to achieve that end.

### IV.   Argument

**1. The court committed clear error by failing to determine whether it had jurisdiction prior ruling on Plaintiff's Motion.**

The court, in its July 9, 2020 Order requiring the parties to brief the plaintiff's standing in light of *Trichell*, recognized that "plaintiff's standing must be resolved before the case can proceed."[12] And in its brief opposing Plaintiff's Motion to Amend, J.J. Marshall cited the Supreme Court's ruling in *Steel v. Citizens for a Better Environment*, in which the Court echoed its 1868 ruling in *Ex parte Lardner* that "[w]ithout jurisdiction the court ***cannot proceed at all*** in any cause."[13] The Defendant's and this court's statements were consistent with the principle that because jurisdiction creates the power to rule, the requirement that a court "must first

---

[9] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)
[10] *See, Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir.1990).
[11] *See Dorsch v. Pilatus Aircraft Ltd.*, 2012 WL 1565447, at *1 (M.D.Fla. May 2, 2012).
[12] *See*, DE 44 at p. 1.
[13] *See*, DE 54 at p. 7.

satisfy itself of … jurisdiction is a rule without exception."[14] But the court failed to do just that—i.e., determine if it had to jurisdiction to consider the Motion to Amend. It instead simply granted the Motion.

To be sure, *Steel* recognized that the Supreme Court has published a "long and venerable line of … cases" all holding that:

> [w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause. On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes. This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it. The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception.
>
> This Court's insistence that proper jurisdiction appear begins at least as early as 1804, when we set aside a judgment for the defendant at the instance of the losing plaintiff *who had himself* failed to allege the basis for federal jurisdiction. Just last Term, we restated this principle in the clearest fashion, unanimously setting aside the Ninth Circuit's merits decision in a case that had lost the elements of a justiciable controversy:
>
>> Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. And if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.[15]

In analyzing *Steel,* the court correctly identified its holding stating, "that the

---

[14] *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir.), <u>cert. denied,</u> 140 S. Ct. 526, 205 L. Ed. 2d 343 (2019) citing *Steel Co.*, 523 U.S. at 94, 118 S.Ct. 1003 (quoting *Ex parte McCardle*, 74 U.S. 506, 514, 7 Wall. 506, 19 L.Ed. 264 (1868)).

[15] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Court must determine whether plaintiffs have standing before deciding whether the <u>cause of action</u> gives them the right to recover."[16] Yet, it didn't apply *Steel*. Instead of actually determining if jurisdiction existed, the court proceeded on the assumption it had jurisdiction to consider the Motion to Amend.

*Steel* flatly rejected this same process, which it described as the "doctrine of 'hypothetical jurisdiction' that enables a court to resolve contested questions of law when its jurisdiction is in doubt", since rulings based on assumed jurisdiction "come to the same thing as an advisory opinion, disapproved by this Court from the beginning."[17] Applying this rationale to the court's decision to review the Motion to Amend without first determining if jurisdiction existed means the court's order granting the Motion to Amend is "the same thing as an advisory opinion."

Defendant—bolstering its argument—also cited *Wernick v. Matthews*, a 1975 decision from the Old Fifth, for the same concept espoused in *Steel*: "Binding precedent requires the court to first determine whether it has jurisdiction before reviewing substantive issues."[18] And while the court addressed *Wernick*, it found the decision "inapposite" because it "addressed whether the appellate court had jurisdiction over an appeal when the applicable statute gave appellate jurisdiction to the Supreme Court, and concluded that it did not."[19] This micro analysis overlooked the fact that *Wernick*, like *Steel*, were not fact-specific citations, but cited solely for the

---

[16] *See*, DE 58, at p. 6, fn. 3.
[17] *Id.* at 101.
[18] *See,* DE 54 at p. 1.
[19] *See*, DE 58, at p. 6, fn. 3.

unremarkable concept that a court must determine whether it has jurisdiction *before* reviewing a motion.

The court's failure to determine whether it had jurisdiction before considering the Motion to Amend violated binding precedent, was clear error, and therefore, merits reconsideration.

### 2. The court erroneously concluded 28 U.S.C. § 1653 could be used to fix the Complaint's deficient jurisdictional facts.

As detailed above, despite the court's obligation to first determine whether jurisdiction existed before proceeding to the merits of Gartrell's Motion to Amend, the court first granted the Motion and then addressed the jurisdictional issue, erroneously finding that 28 U.S.C. § 1653 allowed Gartrell to amend her factually deficient complaint to create jurisdiction. The court's analysis of this issue—while correctly reciting the statutory language of § 1653—overstated the relief available under the statute.

Addressing the jurisdictional issue, the court correctly summarized J.J. Marshall's argument, as follows:

> J.J. Marshall argues that Gartrell did not allege sufficient facts for standing under the requirements of Trichell, and therefore that this Court lacks jurisdiction and must dismiss her complaint without ruling on her motions. J.J. Marshall states that "[t]he court cannot act in the absence of jurisdiction, so it cannot find jurisdiction lacking and then, create jurisdiction post factum by authorizing amendment to a factually deficient complaint."

But instead of conducting an Article III analysis of whether the Complaint was factually deficient, the court took a wrong turn, as demonstrated by its

Page **7** of **22**

conclusion that "[u]nder settled pleading principles, the court retains discretion to allow amendment to cure jurisdictional defects."[20] The "settled pleading principles" the court alluded to are not apparent to J.J. Marshall. Nor did the court list any specific principles in the Order.

The court also concluded that Congress "has [also] authorized amended complaints by statute, permitting '[d]efective allegations of jurisdiction to be amended'" under 28 U.S.C.A. § 1653.[21] While this statement is literally true, the court's reliance on § 1653 here conflicts with the Supreme Court's ruling in *Newman-Green v. Alfonzo-Larrain* that the statute "addresses only incorrect statements about jurisdiction *that actually exists*, and not defects in the jurisdictional facts themselves."[22] The importance of the phrase "that actually exists" cannot be overstated since it recognizes that jurisdiction can exist even the "allegations of jurisdiction" are defective, but "defects in the jurisdictional facts themselves" leave the court without jurisdiction and compel dismissal. State another way, because the Plaintiff lacked standing when the complaint first was filed, her subsequent amendment cannot create standing. Any attempt at subsequent amendment is, in fact, simply ineffective, because "[b]y lacking standing to bring a claim the [plaintiff] also lack[s] standing to amend the complaint."[23]

The court required briefing from the parties specifically because "*Trichell* calls

---

[20] *See*, DE 58 at p. 5.
[21] *Ibid.* (emphasis added).
[22] *Id.,* 490 U.S. 826, 832 n. 5 (1989).
[23] *See, Wright v. Dougherty County*, 358 F.3d 1352, 1356 (11th Cir.2004).

into question plaintiff's [Article III] standing here."[24] And Gartrell, in her Motion to Amend seeking to avoid the same fate as Trichell, requested she be allowed to "amend her allegations to more specifically describe[] her concrete injury"[25] so that jurisdiction existed.

The parties and the court were therefore in agreement that the issue presented was whether the court could permit Gartrell to amend her Complaint to add more factual details about her alleged injury in order to satisfy *Trichell*. Because the amendment sought here was to cure factual deficiencies of harm in order to create jurisdiction, § 1653 was unavailable since it "speaks of amending '*allegations* of jurisdiction,' which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves.[26]

In support of its ruling that § 1653 could be used here, the court cited the Supreme Court's decision in *Schlesinger v. Councilman*, which it interpreted as meaning "any defective allegations of jurisdiction may be amended" under § 1653 regardless of whether the allegations relate to procedural issue such as diversity jurisdiction or factual issue such as whether the harm suffered by the plaintiff satisfies Article III's "concrete injury" threshold. But, in fact, *Schlesinger* supports J.J. Marshall's argument and demonstrates the court's error.

---

[24] *See*, DE 44, at p. 1.
[25] *See*, DE 53, at p. 3.
[26] *Newman–Green,* 490 U.S. at 831.

*Schlesinger* came to the Supreme Court on appeal of a ruling from a district court permanently enjoining the military from proceeding with a pending court-martial against Councilman.[27] The Court presumed "the District Court found jurisdiction under 28 U.S.C. s 1331", the so-called "diversity statute", but noted that the "Petitioners argue, however, that even if the District Court might otherwise have had jurisdiction under s 1331, this was removed by enactment of Art. 76 of the Uniform Code of Military Justice, 10 U.S.C. s 876. "Footnote 9", which is the one this court cited for the proposition that § 1653 can be used to cure "*any* defective allegations of jurisdiction,"[28] states in its entirety:

> The 'complaint' filed in the District Court, see n. 5, supra, nowhere mentioned s 1331 nor alleged the requisite amount in controversy. The facts alleged and the claim asserted nonetheless were sufficient to demonstrate the existence of a federal question. See C. Wright, Law of Federal Courts 290—291 (2d ed. 1970). And although a complaint under s 1331 is fatally defective unless it contains a proper allegation of the amount in controversy, see, e.g., Canadian Indemnity Co. v. Republic Indemnity Co., 222 F.2d 601 (CA9 1955), respondent now claims that the matter in controversy does exceed the requisite amount. Brief for Respondent on the Jurisdictional Issues 4—5. Defective allegations of jurisdiction may be amended, 28 U.S.C. s 1653. In view of our disposition of the case, however, no purpose would be served by requiring a formal amendment at this stage.

Footnote 9 in *Schlesinger* does not support the conclusion that § 1653 can be used to fix a factually deficient complaint like Gartrell's to create Article III jurisdiction that doesn't currently exist. It instead recognizes what this court noted

---

[27] *Schlesinger v. Councilman*, 420 U.S. 738, 740 (1975).
[28] *See*, DE 58 at p. 5 (emphasis added).

earlier in its Order i.e., § 1653 permits "[d]efective allegations of jurisdiction" to be amended *if jurisdiction already exists*.[29] In *Schlesinger*, the "defective allegations of jurisdiction" related to the plaintiff's failure to "allege[] the requisite amount in controversy" to sustain diversity jurisdiction. That's not the case here where Gartrell's Complaint fails to contain factual allegations sufficient to support a finding of harm necessary to imbue this court with Article III jurisdiction.

Perhaps realizing this conundrum, the court attempted to address it by claiming: "Were J.J. Marshall's arguments about standing taken to their logical end, no plaintiff would ever be permitted to amend a complaint for lack of standing in any situation, contradicting § 1653."[30] But this analysis has serious flaws.

First, it improperly conflates "standing" and "jurisdiction." A plaintiff can have standing, but the court can still lack jurisdiction.[31] That's the situation here: Gartrell has standing to pursue her FDCPA, but the court lacks jurisdiction under Article III. § 1653 does not mention "standing", only "jurisdiction," and as *Schlesinger* and scores of other cases make clear, the statute was designed solely to rectify situations in which subject-matter *jurisdiction* already *exists*, but a simple pleading defect makes it appear otherwise. As *Newman-Green* makes clear, § 1653 was

---

[29] *Ibid.* (emphasis added).
[30] *Ibid.* at p. 5-6.
[31] *See, United Supreme Council v. United Supreme Council of the Ancient*, 792 Fed. Appx. 249, 255 (4th Cir. 2019) (the district court "conflates two distinct concepts: a party's capacity to sue and be sued, and this court's Article III jurisdiction.")

*not* designed to fix the defect here: a factual pleading deficiency resulting in a lack of jurisdiction. The only "cure" here is dismissal without prejudice.

Which leads to the second point, namely the court's claim that agreeing with J.J. Marshall's argument would render § 1653 meaningless. In its post-*Trichell* brief, J.J. Marshall, however, made clear that § 1653 serves an important, but limited, purposes by creating a mechanism to fix certain, limited jurisdictional defects in pleadings *if* jurisdiction actually exists, and it cited *Code Red Roofers v. Hermitage Insurance* as an example of the proper application of the statute. The same statute, however, cannot fix Gartrell's Complaint because it is "factually deficient" in the Article III context, meaning the court never had jurisdiction.

Incongruously, the court determined that § 1653 allows a plaintiff to add facts to factually deficient complaint and thereby, *create* jurisdiction. And were this erroneous ruling to gain traction, it would not only be contrary to the plain language of the statute but it would also eviscerate the bedrock principle of Article III jurisdiction dating back to the Supreme Court's 1868 ruling in *Ex parte McCardle* that "[w]ithout jurisdiction the court cannot proceed at all in any cause"[32] by creating an exception for cases—like this one—in which the pending complaint fails to allege facts sufficient to create Article III jurisdiction. Such a ruling would unconstitutionally permit courts to find jurisdiction lacking—as is the case here—but nonetheless apply § 1653 to create jurisdiction after-the-fact by allowing the plaintiff

---

[32] *Id.,* 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1868).

to amend the deficient complaint to add more facts.

In *Patchak v. Zinke*, the Supreme Court stressed that "Congress' power over federal jurisdiction is an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects."[33] The court's ruling dispenses with the restraint § 1653 places on the courts by expanding the statute's reach to situations in which jurisdiction *does not* presently exist.

In *Newman-Green*, the Supreme Court anticipated some plaintiffs—and even federal judges—would be tempted to argue that § 1653 can be used to alter or embellish factually deficient complaints to create federal jurisdiction and preemptively rejected the notion ruling that "[a]llowing such a change would empower federal courts to amend a complaint so as to produce jurisdiction where none actually existed before, and would thereby go beyond the text and intent of § 1653."[34] This is precisely what's happened here; the court has improperly "turned back the clock" to allow Gartrell to create jurisdiction where none previously existed.

The Eleventh Circuit applied *Newman-Green* in *San Francisco Residence Club v. 7027 Old Madison Pike* to prevent an after-the-fact amendment to create jurisdiction where none existed.[35] In that case, the plaintiff San Francisco Residence Club sued the defendants over a dispute about money, which one of the defendants "7027"

---

[33] *Id.,* 138 S. Ct. 897, 907 (2018).
[34] *See id.* at 831.
[35] *Id.*, 583 F.3d 750, 755–56 (11th Cir. 2009).

ultimately deposited into the court registry.[36] The plaintiff then moved to condemn the funds and requested they be disbursed to non-party Triad.[37] After the district court granted that motion, 7027 filed a motion to alter, amend, or vacate the order and requested that the court "direct return of any money paid from the clerk to the registry of this court pending completion of the arbitration proceedings."[38] When that motion was denied, 7027 appealed.

On appeal, the plaintiff argued that since Triad was a non-party, the district court could not order it to return the funds. 7027 argued "there is no reason that the district court cannot order Triad or [plaintiff] to restore the funds wrongfully disbursed."[39] The Eleventh Circuit agreed with the plaintiff finding the district court lacked jurisdiction over Triad and that 7027 hadn't requested the district court to order the plaintiff to "reimburse the funds disbursed from the court registry" so it lacked jurisdiction to consider that issue.[40]

7027 then moved to amend the motion it filed in the district court claiming the amendment was sought pursuant to § 1653 to cure "defective allegations of jurisdiction."[41] The amendment sought to add language requesting the district court compel not only Triad, but the plaintiff to return the money.[42] Recognizing the limited application of § 1653, the court rejected 7027's attempt to create appellate

---

[36] *Id.* at 754.
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at 755.
[41] *Id.*
[42] *Id.*

jurisdiction after-the-fact, holding:

> …section 1653 permits amendment only to correct incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves. 7027 [] instead attempts to create jurisdiction by moving this Court to amend the request for relief in a motion the district court already has denied.[43]

While *San Francisco Residence Club* involved appellate jurisdiction, as opposed to Article III jurisdiction, the same analysis applied here and compelled the court to deny the Motion to Amend because § 1653 does not permit amendment to cure "defects in the jurisdictional facts" in an effort to create jurisdiction where none previously existed. This court's Order granting the Motion to Amend implicitly concedes § 1653 did not permit the relief granted by stating the purpose of the ruling is to permit Gartrell to allege her claimed "injuries in more detail, as <u>Trichell</u> requires."[44] The *only* possible purpose of amending was to create jurisdiction that didn't otherwise exist. And that was impermissible.

The fact that § 1653 was created by Congress to permit federal courts to remedy a very limited and specific type of jurisdictional defect—that does not exist here—further demonstrates this court lacked the power to permit Plaintiff to remedy the jurisdictional defects in her Complaint after-the-fact. Federal courts, including the Supreme Court, have consistently refused to rewrite statutes on the premise the Congress meant something other than what the statute as written states. "There is a

---

[43] *Id.* at 755-56 (internal citations omitted).
[44] *See*, DE 58 at p. 7.

basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."[45] Here Congress chose to limit the power of federal courts to "fix" jurisdictional defects solely to remedying "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves."[46] This court therefore lacks power to remedy the "defects in [the Complaint's] jurisdictional facts."

### 3. Jurisdiction cannot be created by equity.

In *Amco Construction v Mississippi*, the Old Fifth held that the fact one party may be "severely prejudiced" by a determination jurisdiction is lacking "is irrelevant [because] [n]otions of waiver and estoppel cannot confer on a court of the United States the jurisdiction to decide a claim."[47] In its review here, the court committed clear error by considering the perceived prejudicial effect dismissal would have on Gartrell, stating:

> Gartrell should have the opportunity to argue that she has standing, and if she does, to argue the merits of her claim. Any prejudice to J.J. Marshall in allowing amendment does not outweigh the interests of justice in allowing Gartrell to proceed.[48]

Neither prejudice nor any other "equitable" consideration is relevant to determining jurisdiction. The constitutional balance of policies creating the Article

---

[45] *United States v. Locke*, 471 U.S. 84, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985)
[46] *See, Newman-Green,* 490 U.S. at 831.
[47] *Id.,* 602 F.2d 730, 733 (5th Cir. 1979). Under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.
[48] *See,* DE 58 at p. 5.

III grant of judicial power, in fact, forbids a court from considering "prejudice" to a party or even the "interests of justice" when determining whether to dismiss a case for lack of jurisdiction. The court either has jurisdiction, or—as in this case— jurisdiction is lacking. Any so called "asserted inequity," "prejudice" or "interest of justice" cannot form the basis for finding jurisdiction.[49]

But even if "prejudice" or the "interests of justice" were relevant here, the court's analysis of the issue would still be flawed. In the Order, the court notes: "Gartrell's proposed amended complaint does not change … Gartrell's injuries upon receiving the letter from J. J. Marshall."[50] Implicit here is a finding that Gartrell *knew* what injuries the letter caused her shortly after she received the letter more than two (2) months before she filed this lawsuit. At some point prior to filing the Complaint, an affirmative decision was made *not to include **all** Gartrell's injuries* in the Complaint. Maybe Gartrell didn't detail all her injuries to her attorney. Or perhaps she did, and her attorney decided not to include all those injuries in the Complaint. Whether the decision not to allege all Gartrell's injuries in the Complaint was made by Gartrell or by her counsel has no real importance here. What is importance—because it demonstrates inequitable nature of the court's analysis—is that J.J. Marshall had *no* role in the decision not to include all Gartrell's alleged injuries in the Complaint. Ironically, it is J.J. Marshall that has been prejudiced by the other side's decision not

---

[49] *See, Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, fn. 21 (1978), citing *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18, 71 S.Ct. 534, 95 L.Ed. 702 (1951).
[50] *See*, DE 58 at p. 6.

to include all Gartrell's injuries, since J.J. Marshall has incurred significant expenses litigating a jurisdictional issue that may have otherwise been avoided.

The bigger issue, of course, is that that a harsh result from a court determining it lacks jurisdiction has no relevance to Article III jurisdiction. If, for example, a party seeks removal of a case to a federal court, permits it to be tried and only then, seeks remand for lack of subject matter jurisdiction, the must be dismissed without prejudice if the court determines jurisdiction is lacking—regardless of the perceived unfairness.[51] This is because "the subject matter jurisdiction of federal courts is limited by the Constitution and the Congress, and cannot be expanded by judicial interpretation."[52]

Here the court was required to determine if the pending Complaint, at the time of filing, conferred jurisdiction "regardless of the costs it imposes."[53] By ruling that "[a]ny prejudice to J.J. Marshall in allowing amendment does not outweigh the interests of justice in allowing Gartrell to proceed" the court impermissibly infected its jurisdictional analysis with equitable concerns.

**4. Jurisdiction cannot be created after-the-fact by amending the operative complaint.**

In his 1824 opinion in *Mollan v. Torrance*, Chief Justice Marshall wrote: "It is

---

[51] *In re Carter*, 618 F.2d 1093, 1097 (5th Cir. 1980).

[52] *Id.* The Old Fifth ultimately vacated the district court's post-judgment remand order finding that while diversity jurisdiction was, in fact, lacking, federal question jurisdiction existed. *Id.* at 1104.

[53] *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71, 124 S. Ct. 1920, 1924, 158 L. Ed. 2d 866 (2004) citing *Mollan v. Torrance,* 9 Wheat. 537, 539, 6 L.Ed. 154 (1824); *see also Farquharson v. Citibank, N.A.,* 664 F. App'x 793, 798 (11th Cir. 2016)

quite clear, that the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events."[54] The natural corollary to this rule is that if jurisdiction has not been vested "at the time of the action brought … it cannot be [created] by subsequent events." Stated another way, "[b]y lacking standing to bring a claim the appellants also lack standing to amend the complaint."[55]

As the Supreme Court recognized 180 years after Justice Marshall's initial pronouncement:

> This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction…against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal.[56]

The law could not be clearer on this issue. Yet, despite citing *Mollan*'s uncompromising language, the court—having implicitly determined the Complaint fails to allege sufficient facts to create subject-matter jurisdiction under Article III—found it nonetheless had "jurisdiction to permit" Gartrell to amend the Complaint to "allege [her] injuries in more detail" in order to clear the Article III hurdle articulated in *Trichell*.[57] Allowing Gartrell to amend the complaint to add "more detail" i.e., "new factual allegations," according to the court, "does not change the 'state of

---

[54] *Id.*, 22 U.S. 537, 539 (1824).
[55] *Wright*, 358 F.3d at 1356.
[56] *Grupo Dataflux*, 541 U.S. at 570–71.
[57] *See*, DE 58 at p. 6.

things,' or Gartrell's injuries upon receiving the letter from J.J. Marshall."[58]

But the court read Justice Marshall's words too broadly. In *Mollan*, federal jurisdiction was based on diversity of the parties. The dispute before the Court was whether diversity jurisdiction was based on citizenship "at the time of the plea pleaded" or "at the time the action was brought."[59] The Court ruled "that the jurisdiction of the Court depends upon the state of things at the time of the action brought."[60] Read in context, "things" in the "state of things" related specifically to the jurisdictional allegations of citizenship and not allegations of fact made to establish a federal court's subject-matter jurisdiction.

The court's ruling establishing the following standard: if the decision not to include facts known to a plaintiff when a complaint is first filed results in the court lacking Article III jurisdiction, the lack of jurisdiction can later be "cured" by amending the complaint to add the previously excluded factual allegations since those new factual allegations "do[] not change the state of things" because they existed when the original complaint was filed. The Order cites no legal support for this proposition.

And by allowing Gartrell to file an amended complaint that includes new

---

[58] *Ibid.* The court, citing *Holzman v Malcolm S. Gerald*, also found support for its ruling by determining the proposed amended complaint "does not contradict her prior statements." This finding has no relevance to a determination of jurisdiction, the court cites nothing in the record regarding this Gartrell's alleged "prior statements", and *Holzman*, which involved a *factual* attack to jurisdiction thereby, permitting the court "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *See, Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).
[59] *Mollan*, 22 U.S. at 539.
[60] *Id.*

factual allegations of injuries, the court has created a conundrum. Due process requires that J.J. Marshall be allowed to investigate the new factual allegations through discovery, including deposing Gartrell a second time. While it seems reasonable to assume the court would permit a second deposition, the very idea that a second deposition would be necessary calls into question the court's ruling that the filing of an amended complaint "does not change the 'state of things.'"

## III.     Conclusion

The court implicitly found that the operative Complaint doesn't imbue this court with jurisdiction because the factual allegations are insufficient to create Article III jurisdiction. And § 1653 cannot be used to create jurisdiction that doesn't already exist. Because the pending complaint fails to satisfy Article III, "dismissal for lack of subject-matter jurisdiction is the only option available in this case."[61]

## Local Rule 3.01(g) Certification

Defendant hereby certifies counsel has conferred in good faith with counsel for Plaintiff regarding the relief requested herein and has been informed that Plaintiff opposes such relief.

---

[61] *Grupo Dataflux*, 541 U.S. 567, 574–75, 124 S. Ct. 1920.

Page **21** of **22**

Respectfully submitted by:

/s/ Dale T. Golden
Dale T. Golden, Esq.
Florida Bar Number:  0094080
**GOLDEN SCAZ GAGAIN, PLLC**
1135 Marbella Plaza Drive
Tampa, Florida 33619
Phone:  (813) 251-5500
Direct:  (813) 251-3632
Fax:  (813) 251-3675
dgolden@gsgfirm.com
*Counsel for Defendant*